# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHEL INTERNATIONAL, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>VINCENT B. ZANINOVICH & SONS, INC.,<br><br>  Defendant. | Case No. 1:18-cv-00729-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>(ECF Nos. 8, 14, 15, 16)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On May 29, 2018, Plaintiff Nathel International, Inc. filed this action against Defendant Vincent B. Zaninovich & Sons, Inc. seeking declaratory relief. (ECF No. 1.) Currently before the Court is Defendant's motion to dismiss which has been referred to the undersigned for the preparation of findings and recommendations. (ECF No. 9.)

Oral argument on the motion to dismiss was heard on September 12, 2018. Counsel Craig Stokes appeared telephonically for Plaintiff and counsel C. Russell Georgeson and Greg Brown appeared for Defendant. Having considered the the moving, opposition, and reply papers, arguments presented at the September 12, 2018 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

/ / /

/ / /

# I.

## BACKGROUND

During November and December 2017, Plaintiff purchased approximately 11,184 boxes of grapes from Defendant to be shipped to the Middle East. (Compl. ¶ 9.) Plaintiff alleges that the grapes that were received were not of suitable shipping condition. (Id. ¶ 10.) Defendant has demanded full payment for the grapes in the amount of $89,633.00. (Id.) Plaintiff contends that the $29,943.00 which has been paid is payment in full due to the condition of the grapes received. (Id.)

On May 29, 2018, Plaintiff filed this action alleging breach of contract and violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499 et seq., and is seeking declaratory judgment. (ECF No. 1.) On July 17, 2018, Defendant filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 8.) At the order of the Court, on August 29, 2018, Defendant filed supplemental briefing in support of the motion to dismiss. (ECF Nos. 13, 14.) Plaintiff filed an opposition to the motion to dismiss on August 31, 2018. (ECF No. 15.) Defendant filed a reply on September 5, 2018. (ECF No. 16.)

# II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. A jurisdictional attack under Rule 12(b)(1) may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the allegations in the complaint, asserting they are insufficient to invoke federal jurisdiction. Safe Air for Everyone, 373 F.3d at 1039. In deciding a facial challenge, the court assumes the allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

A factual attack challenges truth of the allegations that would otherwise invoke federal jurisdiction. Safe Air for Everyone, 373 F.3d at 1039. "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their

formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (1989).

"In general, a district court is permitted to resolve disputed factual issues bearing upon subject matter jurisdiction in the context of a Rule 12(b)(1) motion unless "the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits." Kingman Reef Atoll Investments, L.L.C. v. United States, 541 F.3d 1189, 1196–97 (9th Cir. 2008) (citations omitted); see also Berardinelli v. Castle & Cooke Inc., 587 F.2d 37, 39 (9th Cir. 1978) (A party is entitled to have the jurisdictional issue submitted to a jury only where the jurisdictional issue and the issue on the merits are factually so 'completely intermeshed,' . . . that "the question of jurisdiction is dependent on decision of the merits[.]"). The party asserting jurisdiction bears the burden of proving jurisdiction to survive a motion to dismiss under Rule 12(b)(1). Kingman Reef Atoll Investments, L.L.C., 541 F.3d at 1197; Ass'n of Am. Med. Colleges v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000).

### III.

### DISCUSSION

Defendant contends that PACA only provides jurisdiction to hear disputes that seek to impose damages liability, and secondly, that Plaintiffs have not alleged facts to support a separate diversity jurisdiction. Defendant argues that, since Plaintiff is only seeking declaratory relief, the Court does not have jurisdiction over this dispute. Defendant also contends that this court should decline to decide the complaint for declaratory relief because there is an alternative forum, the United States Department of Agriculture ("USDA") that is deciding the same issue and has primary jurisdiction over the matter. Alternately, Defendant seeks for the Court to stay this action pending resolution of the proceedings in the USDA to avoid a waste of resources and conflicting judicial determinations.

Plaintiff counters that the complaint sets forth sufficient facts to state a cognizable claim, that Plaintiff has selected the federal court to hear this matter, and since they are the first to file this matter should be decided by the federal court. Plaintiff argues that there is no other action currently pending as Defendant has not filed a formal complaint with the USDA, and the

1  informal complaint was filed after the filing of this action. Plaintiff also asserts that this court

2  has both federal question and diversity jurisdiction over this action.

3     Defendant responds that Plaintiff has failed to address the legal arguments raised in the

4  motion to dismiss. Defendant contends that Plaintiff's response misses the point that this court

5  does not have jurisdiction over the matter. Defendant argues that even if the court finds that it

6  has jurisdiction, Defendant is still able to proceed with the reparations proceedings before the

7  USDA and this action should be stayed to conserve judicial resources and avoid the risk of

8  conflicting judgments.

9     **A.    Jurisdiction**

10    Plaintiff brings this action pursuant to PACA and also alleges diversity jurisdiction under

11  28 U.S.C. § 1332. Defendant contends that Plaintiff has not adequately alleged diversity of

12  citizenship or that the amount in controversy meets the jurisdictional requirement. Plaintiff

13  counters that the allegations in the complaint are sufficient to allege diversity jurisdiction.

14    1.    <u>Diversity Jurisdiction</u>

15    District courts have original jurisdiction of all civil actions between citizens of different

16  States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of

17  interest and costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the

18  presence "of a single plaintiff from the same State as a single defendant deprives the district

19  court of original diversity jurisdiction over the entire action." <u>Abrego Abrego v. The Dow</u>

20  <u>Chemical Co.</u>, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).

21    A corporation is deemed to be a citizen of any State by which it has been incorporated

22  and of the State where it has its principal place of business. <u>Lincoln Prop. Co. v. Roche</u>, 546

23  U.S. 81, 94 (2005) (quoting 28 U.S.C. § 1332(c)(1)). Here, Plaintiff only alleges that

24  Defendant's principle place of business is in Richgrove, California. A complaint must set forth

25  both the state of incorporation and the principle place of business for a corporation to properly

26  allege citizenship. <u>Harris v. Rand</u>, 682 F.3d 846, 850 (9th Cir. 2012); <u>Veeck v. Commodity</u>

27  <u>Enterprises, Inc.</u>, 487 F.2d 423, 426 (9th Cir. 1973). By failing to include Defendant's place of

28  incorporation, Plaintiff has failed to properly allege the citizenship of Defendant. However, as

1  Defendant acknowledges that this can be corrected by amendment of the complaint.

2  Defendant also argues that the amount in controversy in this action is the value of the
3  declaratory relief, the $59,690.00 for which Plaintiff seeks declaratory relief, and therefore, the
4  jurisdictional requirement is not met. While Plaintiff argues that the amount in controversy is the
5  full amount of the invoices, $89,633.00, "[i]n actions seeking declaratory or injunctive relief, it is
6  well established that the amount in controversy is measured by the value of the object of the
7  litigation." Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (quoting Hunt v. Wash.
8  State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). "Where the complaint seeks injunctive
9  or declaratory relief and not monetary damages, the amount in controversy is not what might
10 have been recovered in money, but rather the value of the right to be protected or the extent of
11 the injury to be prevented." Jackson v. Am. Bar Ass'n, 538 F.2d 829, 831 (9th Cir. 1976).

12 In this action, Plaintiff is seeking a declaration that it does not owe the $59,690.00 that is
13 being demanded by Defendant. (Compl. ¶ 16.) While Plaintiff argued at the hearing that they
14 are seeking a declaration that the amount paid is payment in full for the full amount of the
15 $246,688.00 sought in the USDA action, complaint itself only alleges that the amount of the
16 invoices is $89,633.00. While Plaintiff may be able to cure the deficiency by amendment of the
17 complaint, the amount in controversy as alleged in the complaint is less than $75,000, and
18 diversity jurisdiction does not exist in this action.

19        2.    PACA

20 Pursuant to 28 U. S. C. § 1331, federal courts have original over "all civil actions arising
21 under the Constitution, laws, or treaties of the United States. Plaintiff also alleges that this Court
22 has federal question jurisdiction pursuant to PACA. PACA was enacted in 1930 to prevent
23 unfair business practices and promote financial responsibility in the fresh fruit and produce
24 industry. Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997). Congress enacted
25 PACA "to protect sellers of perishable agricultural commodities (basically, fruits and vegetables)
26 from unfair conduct by dealers, brokers and commission–merchants dealing in such
27 commodities, including failure to pay promptly and fully for produce ordered." Andrew M.
28 Campbell, Annotation, Statutory Trust under Perishable Agricultural Commodities Act, 128

A.L.R. Fed. 303 (1995). As originally adopted, PACA had two main features to protect sellers of perishable agricultural commodities. Id. First, all brokers and dealers in perishable agricultural commodities must obtain a license from the Secretary of Agriculture. Sunkist Growers, Inc., 104 F.3d at 282 (citing 7 U.S.C. §§ 499c and 499d). This license is revocable in the event it is found that a commission merchant, dealer, or broker has fragrantly or repeatedly violated prohibitions on unfair conduct. 7 U.S.C. 499h(a). Section 499b contains an enumeration of the unfair practices by commission merchants, dealers, and brokers in connection with transactions in interstate or foreign commerce that violate PACA. 7 U.S.C. § 499b.

Second, PACA provides a procedure for "sellers of perishable agricultural commodities who have been damaged by unfair conduct as defined in § 2 of PACA" to "obtain from the Department of Agriculture an order requiring the offending dealer, broker or commission merchant to pay damages to the injured sellers." Andrew M. Campbell, Annotation, Statutory Trust under Perishable Agricultural Commodities Act, 128 A.L.R. Fed. 303 (1995).

Defendant contends that PACA only provides the district court with jurisdiction over liability for damages for violations of section 499b. Defendant argues that, since Plaintiff is not seeking damages from Defendant, the federal court has no jurisdiction over the claim. Plaintiff does not address the issue of whether a complaint must seek damages for a federal court to have jurisdiction under PACA, but generally asserts that the federal court has jurisdiction over disputes.

a. **Plaintiff has not alleged facts to demonstrate it is a commission merchant, dealer, or broker within the statute**

First, Defendant argues that only trust beneficiaries or the secretary can commence an action in the district court under PACA. Pursuant to section 499e(c) "[t]he several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust." 7 U.S.C. § 499e(c)(5). Defendant argues that 499e(c) is the jurisdictional limits and only grants jurisdiction for the trust beneficiaries or the secretary to commence an action as support for the argument that there is no jurisdiction for the buyer to

bring a suit for declaratory relief. However, Plaintiff has not sought to enforce the trust and therefore 499e(c) is not applicable in this action.

Defendant also argues that jurisdiction does not exist because Plaintiff is not seeking to impose liability for damages. Section 499e(a) provides that any commission merchant, dealer or broker who violates any of the prohibitions in section 499b is liable to the person injured for the full amount of damages sustained due to the violation. 7 U.S.C. § 499e(a). "Such liability" under PACA "may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b). Defendant argues that this section does not provide jurisdiction here because it only allows a suit that would impose liability for damages and Plaintiff is not seeking to impose liability for damages.

Pursuant to the statute "any commission merchant, dealer or broker" may bring suit in a court of competent jurisdiction. Plaintiff alleges in the complaint that it is a PACA licensee, a merchant, and trades in agricultural commodities. (Compl. ¶¶ 6, 8.) However, the statute defines a "commission merchant" as "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(d)(5). Plaintiff has not included any allegations by which the Court can infer that it receives agricultural commodities "on commission, or for or on behalf of another." Therefore, Plaintiff has not alleged sufficient facts for the Court to find that Plaintiff is a commission merchant under PACA.

The statute defines dealer as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that . . . no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or

processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section." 7 U.S.C. § 499a(6). Plaintiff has not alleged that it is a dealer under the statute.

Finally, the statute defines a broker as "any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser. . .." 7 U.S.C. § 499a(7). Plaintiff has not alleged that it is a broker under the statute.

The Court finds that Plaintiff has not alleged facts to establish that it is a "commission merchant", dealer, or broker as defined by PACA in order to bring a suit under section 499e(1) and (2). The Court recommends that Plaintiff's motion to dismiss for failure to state a claim be granted.

### b. Plaintiff's claim arises under PACA

The Court considers whether the statute has provided the federal court with jurisdiction over the PACA claim to determine whether leave to amend the claim should be granted. At issue here is subsection (2) of section 499b which makes it unlawful for a dealer to "fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity. . . ." 7 U.S.C. 499b(2). Plaintiff alleges that the parties' agreement was for Defendant to provide grapes that were suitable to be shipped internationally, and the grapes received were not suitable for international shipping. (Compl. ¶ ¶ 9, 10.) This would be sufficient to state a claim that arises under PACA.

### c. PACA provides the District Court with jurisdiction over claims

Defendant contends that PACA only provides the district court with jurisdiction over liability for damages for violations of section 499b. Defendant argues that, since Plaintiff is not seeking damages from Defendant, the federal court has no jurisdiction over the claim. In the opposition, Plaintiff does not address the issue of whether a complaint must seek damages for a federal court to have jurisdiction under PACA, but generally asserts that the federal court has jurisdiction over disputes. At the September 12, 2018 hearing, Plaintiff conceded that the plain language of the text creates a remedy only in the seller.

Under PACA, any commission merchant, dealer or broker who violates any of the prohibitions in section 499b is liable to the person injured for the full amount of damages sustained due to the violation. 7 U.S.C. § 499b(a). "Such liability" under PACA "may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b).

There is no question that if Defendant, as the seller, was bringing this action in federal court to recover the money owed by Plaintiff this Court would have jurisdiction by means of federal question jurisdiction under PACA. Great Lakes Produce, LLC v. Bailey, No. 1:08-cv-463, 2008 U.S. Dist. LEXIS 74979, at *11 (W.D. Mich. Sep. 29, 2008); Cordova v. R & R Fresh Fruits & Vegetables of California, Inc., No. 15-CV-00155-WQH MDD, 2015 WL 1757890, at *4 (S.D. Cal. Apr. 16, 2015); Abbate Family Farms Ltd. P'ship v. P.Y. Produce LLC, No. C-11-00319 EDL, 2011 WL 7081569, at *3 (N.D. Cal. Nov. 22, 2011), report and recommendation adopted, No. C 11-0319 PJH, 2012 WL 177541 (N.D. Cal. Jan. 23, 2012) see also Logan v. Tiegs, No. CV 03-435-BR, 2004 WL 2851949, at *19 (D. Or. Dec. 13, 2004) ("the seller maintains a private right of action to recover damages under PACA even if the benefit of the trust is not preserved").

Defendant relies on Great Lakes Produce, LLC, 2008 U.S. Dist. LEXIS 74979, in which the plaintiff was seeking a declaration that it was not liable to pay for produce delivered and argued that the claim arose under PACA. In Great Lakes Produce, LLC, an employee was accused of purchasing produce from a supplier and invoicing the produce as if it had been produced by Premier, Plaintiff's competitor, to take profit from the sale of the produce. 2008 U.S. Dist. LEXIS 74979, *3-4. The employee also persuaded growers who were suppliers to Plaintiff to sell to Premier and contacted buyers informing them that Premier was a division of Plaintiff's and got them to switch their accounts to Premier. Id. at *4. The plaintiff sought declaratory relief that it was not indebted to Premier for the produce that was delivered by Premier, damages under the PACA alleging misrepresentation of the source of the produce and

discouragement of profits and pendent state law claims.  Id. at *4-5.  The court found that the second cause of action for misrepresentation and disgorgement of profits clearly fell under PACA because the plaintiff alleged misrepresentation that was prohibited by section 499b(4). Id. at *9.

The plaintiff argued that the first cause of action for breach of contract also arose under PACA, but the court disagreed finding "[t]he duty to pay for produce arises under the law of contract and the Uniform Commercial Code, neither of which has been displaced by PACA." Great Lakes Produce, LLC, 2008 U.S. Dist. LEXIS 74979, *10 (citing AFL Fresh & Frozen Fruits & Veg., Inc. v. De-Mar Food Serv., Inc., No. 06 Civ. 2142, 2007 U.S. Dist. LEXIS 90144, 2007 WL 4302514, at * 2-3 (S.D.N.Y. Dec. 7, 2007); Bernath v. Potato Servs. of Mich., 300 F. Supp. 2d 175, 181-84 (D. Me. 2004)).  The court found that "PACA does create a separate cause of action against a broker or dealer for failure to make full payment in respect to a commodities transaction" and 7 U.S.C. § 499b(4) "does not repeal the law of sales or destroy the rights and liabilities of contracting parties."  Great Likes Produce, LLC, 2008 U.S. Dist. LEXIS 74979, *10.  PACA creates an alternative or additional remedy to sellers of perishable commodities." Id.

The Great Lakes Produce, Inc. court found that the claim did not arise under PACA stating, "Premier had the option of suing either under state law or under PACA.  Premier has never asserted a claim under PACA, and by its motion to dismiss, Premier eschews any reliance on the federal statute.  In short, count 1 seeks a declaration of non-liability on a PACA claim that Premier has never asserted.  The debt underlying count 1 is governed by state law until Premier asserts a claim under PACA, which it has not done."  Id. at *11.  Therefore, it would appear that the court found that a claim seeking a declaration that a party was not liable for the failure to pay was not cognizable under PACA as the statute only authorizes the seller of the produce to bring suit.

Here, Plaintiff brings a claim under PACA asserting that Defendant violated PACA by failing to deliver produce in accordance with the terms of the contract.  This claim arises under PACA and 499e provides that liability for damages for violations of section 499b may be

enforced by a suit in any court of competent jurisdiction. 7 U.S.C. § 499e(a)(b). The question therefore is whether "such liability" is liability for violations of section 499b or is limited to liability for damages for violations of section 499b.

When interpreting a statute, the court "is to ascertain the intent of Congress and to give effect to legislative will." Foxgord v. Hischemoeller, 820 F.2d 1030, 1032 (9th Cir. 1987) (quoting United States v. Taylor, 802 F.2d 1108, 1113 (9th Cir.1986), cert. denied, 479 U.S. 1094 (1987)). "In interpreting a statute, the first step is to look to the language of the statute to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson, 519 U.S. at 341; accord I.R. ex rel. E.N. v. Los Angeles Unified Sch. Dist., 805 F.3d 1164, 1167 (9th Cir. 2015). Interpretation is not to be "guided by a single sentence or member of a sentence, but look[s] to the provisions of the whole law, and to its object and policy." Dole v. United Steelworkers of Am., 494 U.S. 26, 35 (1990).

Here, subsection (a) provides that any commission merchant, dealer or broker who violates any of the prohibitions in section 499b is liable to the person injured for the full amount of damages sustained due to the violation. 7 U.S.C. § 499e(a). Subsection (b) provides that "such liability may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b). The plain language of the statute indicates that Congress only intended to provide the ability to bring a claim under the act for liability for damages. If Congress had intended for suits to be brought solely based on violation of the statute they would not have included the language "for the full amount of damages". The most persuasive evidence of congressional intent is the words selected by Congress. Foxgord, 820 F.2d at 1032. "[T]here is a 'strong presumption that Congress expresses its intent through the language it chooses.' " Tello v. McMahon, 677 F.Supp. 1436, 1441 (E.D. Cal. 1988)

(quoting INS v. Cardoza–Fonseca, 107 S.Ct. 1207, 1213 n. 12 (1987)). The traditional canon of statutory construction "dictates that 'words grouped in a list should be given related meaning.' " Dole, 494 U.S. at 36 (citations omitted). By including the language that liability for violations of section 499b is for the full amount of damages it indicates that Congress intended to limit the ability to bring suit under the statute to those who are seeking damages.

Plaintiff argues that if that were the case a claim for declaratory relief could never be brought under any federal statute. However, had Congress stated that the injured party could bring suit for liability due to violations of the statute there would be no question that Congress intended to allow suits other than those for damages. Further, this reading of the statute is consistent with the purpose for which it was enacted which was "to protect sellers of perishable agricultural commodities (basically, fruits and vegetables) from unfair conduct by dealers, brokers and commission–merchants dealing in such commodities, including failure to pay promptly and fully for produce ordered." Andrew M. Campbell, Annotation, Statutory Trust under Perishable Agricultural Commodities Act, 128 A.L.R. Fed. 303 (1995). This reading of the statute is consistent with the object and structure of PACA as a whole. Dole, 494 U.S. at 36.

The Court finds that PACA does not grant jurisdiction for Plaintiff in this action to bring a claim for declaratory relief. Accordingly, it is recommended that the PACA claim be dismissed without leave to amend.

### d.    Primary jurisdiction

Defendant argues that the USDA has primary jurisdiction over the claims in this action and this Court should decline jurisdiction to allow the USDA to decide the issues raised.

PACA provides that

> Any person complaining of any violation of any provision of section 499b of this title by any commission merchant, dealer, or broker may, at any time within nine months after the cause of action accrues, apply to the Secretary by petition, which shall briefly state the facts, whereupon, if, in the opinion of the Secretary, the facts therein contained warrant such action, a copy of the complaint thus made shall be forwarded by the Secretary to the commission merchant, dealer, or broker, who shall be called upon to satisfy the complaint, or to answer it in writing, within a reasonable time to be prescribed by the Secretary.

7 U.S.C. § 499f(a).

Primary jurisdiction is "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002). "The doctrine of primary jurisdiction . . . is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." United States v. W. Pac. R. Co., 352 U.S. 59, 63 (1956). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." W. Pac. R. Co., 352 U.S. at 63–64 (quoting General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433). "Primary jurisdiction applies in a limited set of circumstances." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit[;]' but "is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency[;]'"and where "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." Clark, 523 F.3d at 1114 (citations omitted).

The primary jurisdiction doctrine requires that questions that raise issues that should be considered in the interests of a uniform and expert administration of the regulatory scheme laid down by an act must be initially submitted to the agency. I. C. C. v. Atl. Coast Line R. Co., 383 U.S. 576, 579 (1966). "[T]he extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in judicial proceedings [] determines the scope of the primary jurisdiction doctrine." United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987). "There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3)

pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." Gen. Dynamics Corp., 828 F.2d at 1362.

"Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Syntek Semiconductor Co., 307 F.3d at 780 (quoting Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir.2002)). Here, the statute itself does not require that disputes be resolved by the USDA, but provides that they may be brought in any court of competent jurisdiction. Nor does the statute in any way abridge or alter other remedies that exist at common law or by statute. The issue here is whether the grapes were received in a condition suitable for international shipment. This is not the type of policy decision that would require uniformity in administration nor is it an issue of first impression. Finally, the issue to be decided is not complicated nor does it require such expertise that it would require deferring to the agency. Plaintiff is bringing a relatively straight forward breach of contract claim. Plaintiff alleges that it contracted for goods that were to be suitable to be shipped internationally and contends that the goods received were not suitable to be shipped internationally. The Court finds that primary jurisdiction does not apply in the circumstances presented here.

**B. Breach of Contract Claim**

Plaintiff also brings this action alleging breach of contract claim. Defendant contends that second cause of action does not allege a breach of contract and does not seek damages. Plaintiff counters that the complaint adequately alleges that the parties agreed that Defendant would provide produce suitable for shipment to the Middle East and the produce received was not in such condition which is sufficient to allege a breach of contract.

The elements of a breach of contract claim under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. Buschman v. Anesthesia Bus. Consultants LLC, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014); Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal.

App. 3d 1371, 1388 (1990), as modified on denial of reh'g (Oct. 31, 2001); Wall St. Network, Ltd. v. New York Times Co., 164 Cal.App.4th 1171, 1178 (2008).

Plaintiff alleges that a contract was entered into with Defendant for the purchase and sale of produce to be shipped to the Middle East. (Compl. ¶ 20.) Defendant shipped defective produce and the produce received by Plaintiff was not suitable for shipment. (Id. ¶¶ 10, 15.) Plaintiff has not been paid for the produce that was shipped to the Middle East receivers because the produce was received in defective condition. (Id. ¶¶ 10, 22.) Defendant is demanding payment for the grapes that were not suitable for shipment. Although Plaintiff is not seeking monetary damages in this action, Plaintiff has alleged damages due to the lack of payment for the produce that was received in defective condition and as Defendants are seeking payment for goods that Plaintiff alleges did not conform to the parties' agreement. The Court finds that Plaintiff's claim states a cognizable breach of contract claim under California law.

C. **Stay of the Action**

Defendant also seeks for this Court to exercise its discretion to deny declaratory relief, or alternately to stay this action pending resolution of the USDA proceedings. Plaintiff counters that there is no other state case or USDA action proceeding at this time.

With recognized exceptions that do not apply here, the Declaratory Judgment Act provides that where a case or controversy exists within its jurisdiction, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Under the Declaratory Judgment Act, a district court may decline to exercise jurisdiction over a declaratory action even though subject matter jurisdiction is otherwise proper." Snodgrass v. Provident Life & Acc. Ins. Co., 147 F.3d 1163, 1166 (9th Cir. 1998). "Claims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule." Snodgrass, 147 F.3d at 1167. Here, the only relief Plaintiff is seeking is a declaration that the amount paid to date is payment in full for the produce. As Plaintiff has not asserted any claims that are independent of the request for declaratory relief there are no other jurisdictionally sufficient claims for the Court to

consider.  Id.

       1.     There is No Parallel State Proceeding Warranting Brillhart Abstention

Defendant seeks for this court to abstain under the factors set forth in Gov't Employees Ins. Co. v. Dizol ("Dizol"), 133 F.3d 1220, 1225 (9th Cir. 1998) and Am. States Inc. Co. v. Kearns ("Kearns"), 15 F.3d 142 (9th Cir. 1994).  The Supreme Court has held that where there are parallel state and federal actions the district court may exercise its discretion to deny or stay the federal action.  Wilton v. Seven Falls Co., 515 U.S. 277, 290 (1995).  "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."  Dizol, 133 F.3d at 1225.  In Dizol, the Ninth Circuit held that in deciding whether to exercise discretion to deny declaratory relief, the district court should consider the Brillhart[1] factors of avoiding needless determination of state law issues, discouraging litigants from filing declaratory actions as a means of forum shopping, and avoiding duplicative litigation.  Dizol, 133 F.3d at 1225.  "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.' "  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 672 (9th Cir. 2005) (citations omitted).

The district court should first determine whether the state and federal action are parallel and may also consider "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations in issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies."  Kearns, 15 F.3d at 145 (concurring opinion); accord Principal Life Ins. Co., 394 F.3d at 672 (quoting Dizol, 133 F.3d at 1225, n.5.)

Defendants rely on Shingle Springs Band of Miwok Indians v. Unite Here Int'l Union,

---

[1]  Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942).

No. 2:16-cv-01057-TLN-EFB, 2017 U.S. Dist. LEXIS 108152 (E.D. Cal. July 12, 2017), to argue that Brillhart abstention is proper where there are parallel federal actions.  In Shingle Springs Band of Miwok Indians, there were two cases pending in federal court, a suit seeking declaratory relief regarding the arbitrability of a labor dispute and the legality of an agreement between the labor union and employer and a case to compel arbitration regarding whether the Tribe had violated a clause of a memorandum of agreement between the parties.  2017 U.S. Dist. LEXIS 108152, at *1-2.  The court granted the request without any discussion regarding the appropriateness of abstention where the parallel actions are both federal.  Id. at *3-4.

However, Courts have found that where there is no parallel state action abstention is inapplicable and it may be an abuse of discretion to dismiss a declaratory relief action.  See Fed. Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1247 (11th Cir. 2000) (It is an abuse of discretion to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist.); U.S. Specialty Ins. Co. v. Elcon Assocs., Inc., No. 3:17-CV-01658-BR, 2018 WL 2418546, at *6 (D. Or. May 29, 2018) (abstention not applicable where state action had been removed to federal court so there were parallel federal proceedings); Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp., No. C 14-3073 PJH, 2014 WL 12691050, at *6 (N.D. Cal. Oct. 31, 2014) ("several of the justifications for Brillhart abstention are absent when the parallel case is in federal rather than state court.").

A stated rational for Brillhart abstention is that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366–67 (9th Cir. 1991) (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942)).  "Thus, when a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court.  Chamberlain, 931 F.2d at 1367.  But that is not the case here where we have two federal venues that are deciding the same issue.  Further, "[t]he [USDA] which has principal responsibility for construing the statute, has held that an informal complaint does not commence an 'action' for

PACA purposes." "R" Best Produce, Inc. v. Eastside Food Plaza, Inc., No. 02 CIV. 6925(DLC), 2003 WL 22231577, at *3 (S.D.N.Y. Sept. 30, 2003).  Therefore, there is not a parallel federal action proceeding in this instance.

The Court finds that since there is no parallel state action, the reasons to abstain under Brillhart are not present and recommends that the motion to abstain be denied.

2.    This Action Should be Stayed Pending Resolution of USDA Proceedings

Defendant argues that Plaintiff filed this action to deny them their choice of forum to resolve the dispute.  Plaintiff contends that since they were the first to file the forum choice should be theirs.

The first filed rule provides that " 'where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action' . . . unless 'there are special circumstances which justify giving priority to the second.' " Fed. Ins. Co. v. May Dep't Stores Co., 808 F.Supp. 347, 350 (S.D.N.Y. 1992) (quoting City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir.1991)).  Courts have dismissed declaratory relief actions on finding that it was an attempt to deprive a plaintiff from his preferred forum.  Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC, 191 Cal.App.4th 357, 376 (2010).  "The federal declaratory judgment is not a prize to the winner of a race to the courthouses." Fed. Ins. Co., 808 F.Supp. at 350 (quoting Perez v. Ledesma, 401 U.S. 82, 119 n.12 (1971) (Brennan, J. dissenting)).

One of the recognized exceptions to the first filed rule "occurs when a party files suit seeking a declaratory judgment immediately after receiving notice of planned suit from the other party." Fed. Ins. Co., 808 F.Supp. at 350 (quoting Cooperative Centrale Raiffeisen–Boerenleen Bank v. Northwestern National Insurance Co, 778 F.Supp. 1274, 1278 (S.D.N.Y.1991)). "[B]ecause the issuance of a declaratory judgment is discretionary, a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case will be allowed to proceed in the usual way." Inst. For Study Abroad, Inc. v. Int'l Studies Abroad, Inc., 263 F.Supp.2d 1154, 1157 (S.D. Ind. 2001) (quoting Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425, 431 (7th Cir.1993)).

Defendant was engaged in months of negotiations to resolve this dispute and asserts that only after telling Plaintiff that they were going to pursue a suit under PACA did Plaintiff hastily file this action. Defendant states that after consultation with their attorney, a reparation complaint was filed with the USDA against Plaintiff seeking to recover $246,688,00 owed for the grapes, plus accrued interest and attorney fees. Defendant contends that Plaintiff filed this suit to deprive them of their selected forum, and proceeding in federal court will greatly increase their cost in litigating this action.

Here, although Plaintiff filed this action prior to Defendant filing a complaint with the USDA, Plaintiff did so only after being informed by Defendant that they would be consulting with their attorney about filing a suit with the USDA. Defendant is the party who was seeking to enforce the agreements between the parties in an attempt to collect $246,688.00 owed by Plaintiff, plus accrued interest and attorney fees. The defendant here is the natural plaintiff in the action; and therefore, should be entitled to the choice of forum. Despite Plaintiff's assertion that this action was not filed as a form of forum shopping, the timing of the filing of this complaint and Plaintiff's opposition itself demonstrates the opposite. The Court finds that special circumstances exist such that the first filed rule should not govern here.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Defendant argues that the USDA is the proper forum for the adjudication of this dispute and requests that the court stay the action pending resolution of the USDA proceedings. Plaintiff argues that there are two forums for this dispute and the regulations make any reparations decisions specifically appealable to the United States District Court. Plaintiff contends that enforcement of any reparations order or appeal could only be enforced in a district court in New York. Plaintiff alleges that filing directly in this court is not forum shopping but more judicially economic, fiscally prudent, and expedient manner to proceed.

A trial court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings

which bear upon the case." <u>Leyva v. Certified Grocers of California, Ltd.</u>, 593 F.2d 857, 863 (9th Cir. 1979). Here, Defendant has filed an informal complaint with the USDA. "While the USDA has held that an informal complaint does not commence an action for PACA purposes, <u>"R" Best Produce, Inc.</u>, 2003 WL 22231577, at *3, this rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court[,]" <u>Leyva</u>, 593 F.2d at 863–64. Further, at the September 12, 2018 hearing, Defendant asserts that it has been invited to file a formal complaint and such a complaint will be filed within a week of the September 12, 2018 hearing.

The Court finds that this action should be stayed to allow the USDA reparations complaint to proceed to avoid the possibility that simultaneous review by the agency authority and the court would result in conflicting rulings. <u>Ctr. for Biological Diversity v. U.S. Dep't of Interior</u>, 255 F.Supp.2d 1030, 1037 (D. Ariz. 2003). The agency proceedings have already commenced and involve the same subject matter and controversy that is at issue in this action. Even it Plaintiff files a compulsory counterclaim in this action, the USDA proceedings will continue. <u>Lake Erie Greenhouse Mgmt. & Leasing Corp. Operating as Clifton Produce</u>, 59 Agric. Dec. 878, 880 (U.S.D.A. Dec. 6, 2000); <u>Kurt Van Engel Comm'n Co., Inc.</u>, 48 Agric. Dec. 731, 732 (U.S.D.A. June 27, 1989). Section 499f provides that a copy of any reparations complaint shall be forwarded to the party alleged to be in violation who will be required to answer within a reasonable time. 7 U.S.C. § 499f(a)(1). Defendant contends that the USDA always resolves such complaints within a reasonable time.

There is no urgency in these proceedings as the dispute is over the amount owed for grapes that were shipped in November and December of 2017. Plaintiff has not identified any prejudice that would be suffered by staying this action pending resolution of the USDA proceedings. Finally, given that the Fresno Division of the Eastern District of California now has one of the heaviest District Judge caseload in the entire nation it would be a waste of judicial and the parties' resources to litigate the same issue here and in the parallel USDA proceedings.

For these reasons, the Court finds that Defendant's request that this action be stayed to

1  allow for the reparations complaint to be decided by the USDA should be granted.

2      **D.**    **Request for Discovery**

3      Plaintiff contends that since discovery under PACA is discretionary, they would be

4  severely prejudiced because there is no requirement that the USDA must allow the use of a

5  voluntary deposition in a reparations procedure and neither party has the right to depose anyone

6  in the United States.  Plaintiff requests that, if this action is stayed, the Court allow discovery of

7  Defendant and the surveyor during the pendency of the stay.  Defendant counters that the

8  regulatory scheme provides for discovery, including the taking of depositions.  Further,

9  Defendant argues that there would be no prejudice to Plaintiff because it is seeking to take the

10  deposition of its own agent who will be able to provide an affidavit in support of any motion for

11  summary judgment filed by Plaintiff.  Finally, any prejudice from the failure to allow depositions

12  would be to Defendant because they would have no manner of testing the accuracy of the

13  surveyor's conclusions or other documents they prepared.

14      The section cited to in Plaintiff's opposition, 7 C.F.R. § 47.17, provides

15      (a) Issuance of subpoenas.  The attendance of witnesses and the production of
documentary evidence from any place in the United States on behalf of any party
16  to the proceeding may, by subpoena, be required at any designated place of
hearing or at any designated place for the taking of a deposition.  Subpoenas may
17  be issued by the Secretary, or by the examiner, over the facsimile signature of the
Secretary upon a reasonable showing by the applicant of the grounds, necessity,
18  and reasonable scope thereof.  Except for good cause shown, applications for
subpoenas shall be filed with the Hearing Clerk at least 30 days prior to the
19  designated date of hearing or deposition.  Except for good cause shown, the
examiner shall not issue subpoenas less than 20 days prior to the designated date
20  of hearing or deposition.
    (b) Application for subpoena duces tecum.  Subpoenas for the production of
21  documentary evidence shall be issued only upon a verified written application.
Such application shall specify, as exactly as possible, the documents desired and
22  shall show their competency, relevancy, materiality, and the necessity for their
production.

23

24  7 C.F.R. § 47.17.

25      The Court assumes that Plaintiff meant to refer to section 47.16 which provides that upon

26  application of the party to the proceeding that examiner may order the taking of testimony by

27  deposition.  7 C.F.R. § 47.16(a).  "If, after examination of the application, the examiner is of the

28  opinion that the deposition should be taken, or if the parties are using depositions in lieu of

1  affidavits pursuant to § 47.20(b)(2), the examiner shall order the taking of the deposition."  7

2  C.F.R. § 47.16(b)(1).

3       To the extent that Plaintiff contends that prejudice will be suffered should they be unable

4  to take the deposition of their witnesses, the documentary procedures set forth allow the use of

5  verified statements or depositions.  7 C.F.R. § 47.20(a).  Plaintiff has not set forth any reason

6  why verified statements or a voluntary deposition of the surveyor would be inadequate given the

7  regulatory language.  Further, it is only where the examiner finds that the deposition should not

8  be taken that Plaintiff would be precluded from taking the deposition of the defendant.  Id.

9       The Court finds that the USDA regulations provide for the taking of discovery and for the

10  parties to present their evidence by verified affidavit or deposition.  Therefore, it is unnecessary

11  for this Court to involve itself in discovery for the USDA action.  Accordingly, Plaintiff's

12  request for discovery should be denied.

13  **IV.**

14  **CONCLUSION AND RECOMMENDATIONS**

15       The Court finds that Plaintiff's complaint does not contain sufficient factual allegations to

16  support a finding that federal or diversity jurisdiction exists in this matter.  However, Plaintiff

17  may be able to cure the deficiencies in the diversity claim by amendment.  Therefore, Plaintiff

18  should be granted an opportunity to file an amended complaint once the stay in this action is

19  lifted.

20       Based on the foregoing, IT IS HEREBY RECOMMENDED that:

21      1.    Defendant's motion to dismiss be GRANTED IN PART AND DENIED IN

22          PART as follows:

23      a.    Plaintiff's PACA claim be DISMISSED without leave to amend for lack of

24          jurisdiction;

25      b.    Defendant's motion for the Court to decline to decide the complaint for

26          declaratory relief be DENIED;

27      c.    Defendant's motion for the Court to abstain from deciding the complaint be

28          DENIED;

d.  Defendant's motion to stay this action to allow resolution of the pending USDA proceedings be GRANTED;

2.  Plaintiff's motion for the Court to allow discovery during the stay of the proceedings be DENIED; and

3.  Plaintiff be GRANTED the opportunity to file an amended complaint to cure the deficiencies as to diversity jurisdiction once the stay in this action is lifted.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 18, 2018**

UNITED STATES MAGISTRATE JUDGE